SERVICE FEED CO. et al. v. CITY OF ARDMORE et al.

No. 23431.    March 19, 1935.

156

Reuel W. Little, for plaintiffs in error.

Potter & Potter, for defendants in error.

PER CURIAM. This suit was brought by the city of Ardmore ex rel. Love & Thurmond against J. T. Spears, Louie Bastine, Service Feed Company, F. L. Lewis, and Ben F. Brown, under the authority of section 29, chapter 173, Session Laws 1923 (section 6240, O. S. 1931), for the enforcement by foreclosure of an assessment lien for street improvements in district 79, city of Ardmore. Spears and Bastine, owners of lot 8, block 427, defaulted. Plaintiffs in error, owners of lot 1, block 428, appeal from a judgment of foreclosure. The action does not involve any property in the district other than these two lots. Since the case was tried upon an agreed statement of facts, it is unnecessary to state the contents of the pleadings. Plaintiffs in error properly raised all the questions now presented to this court. They contend that there was a defect of parties plaintiff; a misjoinder of causes of action; lack of jurisdiction; an adequate remedy at law; that the title obtained by them in 1927 from the county, through tax resale proceedings, extinguished the lien of the special improvement assessments for the years 1925, 1926, and 1927; and that said section 29, under which the foreclosure suit was brought, violates article 4, sec. 1; article 5, secs. 32, 53, 59, 46 (subdivisions (a), (b), (m), (o), (w); article 7, sec. 10; article 10, secs. 7, 14, 20; article 17, sec. 2; section 18, Schedule, of the Constitution of the state of Oklahoma.

The following facts appear from the agreed

statement and the transcript of the proceedings which culminated in the resale tax deed: Love and Thurmond own street improvement bonds Nos. 9 and 11, dated July 31, 1925, each in the sum of $500, bearing 6 per cent. interest per annum until maturity, and thereafter 10 per cent. per annum, issued upon said district. The bonds are of a series of same date. No payment has been made on the bonds, which matured September 15. 1930. Defaults were made as to said lot 1, block 428, on September 15th, for each of the six years 1925 to 1930, inclusive. Plaintiffs in error acquired title to this lot through a tax deed made by the county October 3, 1927. The delinquent assessment installments and interest thereon were duly certified to the county treasurer and entered upon his books as required by law. The agreed statement further shows a dispute as to whether or not the installments due for improvements were canceled by the resale and county deeds as to any of the period in question.

There is a controversy as to whether or not, in fact, the sale by the county was for ad valorem taxes only, plaintiffs in error contending that the sale was for both the general taxes and the improvement assessments for the years 1925, 1926, and 1927. It is admitted that the improvement lien for the years 1928 to 1930, inclusive, was valid and subsisting when this action was commenced, April 30, 1931. Since the resale tax deed was made April 30, 1927, and the improvement assessment for that year became due the following September 15th, there is no ground for the claim that the 1927 improvement assessment was extinguished by the sale. This dispute narrows down to the years 1925 and 1926. The original sale to the county was on the 3rd day of November, 1924, for the 1923 ad valorem taxes, and could not have involved the improvement assessments as to which the first default was made, September 15, 1925. The resale to the county, made April 30, 1927, was for failure to redeem for more than two years after original sale to the county. The deed of October 3, 1927, by the county,. through which plaintiffs in error claim, recites, with respect to the resale deed of April 30, 1927: "* * * Carter county * * * acquired title * * * for taxes, penalties and costs for the year 1923." We have examined the whole record, the agreed statement of facts and exhibits, and find that the weight of the evidence shows that the sale by the county was for general or ad valorem taxes only.

These facts present the following questions of law: (1) Does said section 29, chap. 173, S. L. Okla. 1923 (sec. 6240, O. S. 1931), violate the provisions of section 57, art. 5, of the Constitution? (2) Are the provisions of said section 29 violative of any parts of the Constitution relating to special laws, the functions of the judiciary, taxation, or the rights of municipalities? (3) Was there a defect of parties plaintiff? (4) Was there a misjoinder of causes of action? (5) Did the sale by the county treasurer extinguish any of the improvement assessments? (6) Are the bondholders precluded from recovery by the fact that the delinquent assessments for improvements were certified in due course to the county treasurer by the municipal authorities?

1. Section 57, art. 5, of the Constitution provides, with exceptions not necessary to consider, that:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title * * *; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length. * * *"

The title of chapter 173, S. L. 1923 (sec. 6240, O. S. 1931), is as follows:

"An Act to provide for the establishment and change of the grade, permanent improvement, repair and maintenance of any street, avenue, land, alley, or other public place, in any city or incorporated town in the state of Oklahoma by grading, regrading, paving, repaving, constructing, reconstructing, macadamizing, remacadamizing, chatting, rechatting, graveling, regraveling, curbing, recurbing, guttering, reguttering, draining, redraining and otherwise improving the same; to provide for the installation of water, gas and sewer connection; to provide for the levy and collection of special assessments and the issuance and payment of bonds to pay for said improvements; to provide for the levy of a general tax to repair and maintain permanently improved streets and ways; defining certain terms used in this act; to provide for the repeal of part of article 12, chapter 29, Compiled Oklahoma Statutes, Annotated, 1921, and all other laws or parts of laws in conflict herewith, and declaring an emergency."

This act provides a complete and comprehensive plan for making improvements of the character described in the title, for bondholders' lien upon the property within the improvement district, for the issuance of bonds to pay for the improvements, **and for the levy and collection of**

**special assessments to pay the indebtedness.** The title expressly provides for "collection of special assessments." The foreclosure of the lien is merely one of two methods of collection. This concurrent or cumulative remedy for the enforcement of the lien and collection of the special assessments is referable, cognate, and complementary to the general purpose and subject of the act as expressed in its title, and hence does no violence to that part of section 57, art. 5, of the Constitution which requires that such act shall embrace but one subject, which shall be clearly expressed in its title. City of Pond Creek v. Haskell, 21 Okla. 711, 97 P. 338; In re County Commissioners, 22 Okla. 435, 98 P. 557; State v. Hooker, 22 Okla. 712, 98 P. 964; Coyle v. Smith, 28 Okla. 121, 113 P. 944. Recent decisions of this court are to the same effect.

It is argued that said section 29 is unconstitutional for the further reason that the provision for sale of the real estate "in manner and form as in case of sale of real estate under execution" is within the inhibition of sec. 57, art. 5, supra, which prohibits the amendment or extension of any law by reference to its title only. In support of this contention the first opinion in Casner v. Meriwether, 152 Okla. 246, 249, 4 P. (2d) 19, is cited. There the court was considering chapter 12, S. L. 1925, which purported to grant rights and impose burdens retrospectively. It is apparent, upon careful consideration of the opinions in that case, particularly the final opinion upon rehearing, 152 Okla. 252, 4 P. (2d) 25, that the decision does not afford any authoritative support to this contention. The provision challenged here was enacted by method familiar and of recognized validity in this state, as will appear by reference to various other acts of the Legislature prescribing the manner and form of sale in course of foreclosure of liens. Chapter 54, Okla. Stat. 1931, sec. 10936 et seq., covers generally the subject of liens of many classes. Article 8 of this chapter, sec. 11016 et seq., under the title "Enforcement of Liens," provides at section 11020 that "the real estate or other property shall be ordered to be sold as in other cases of sales of real estate." Section 5, chap. 38, S. L. 1913, authorizes the foreclosure of the liens provided for in said chapter "in the same manner as provided by law for the foreclosure of chattel mortgages." With respect to foreclosure of liens on personal property, there is a similar provision appearing at section 11004, Okla. Stat. 1931. The modern meaning of the word "foreclosure" includes sale in satisfaction of a lien. The provision under consideration relates to a mere detail of practice or remedy in course of the authorized foreclosure. It is not unconstitutional. Since it is here held that the statute is valid, the question of the power of a court of equity to contrive its own method of sale in foreclosure, in the absence of such statutory provision, is not determined.

2. The numerous other constitutional questions raised are upon the theory that said section 29, which authorizes the enforcement of a lien for special improvement assessment by foreclosure, violates the various above-cited provisions of the Constitution, which relate to one or more of the following subjects: Inhibitions against special laws or prescribed methods for the enactment of special laws; the functions of the judiciary; taxation; the rights of municipalities. That the current of judicial decision upon the questions raised has not run always in the same direction is apparent from the cases cited in the briefs. However, the general trend of judicial thought and the last applicable decision of this court sustain the validity of the section. In Bailey v. Oklahoma City, 157 Okla. 96, 11 P. (2d) 113, the validity of section 29 was assailed upon the ground that the foreclosure proceeding therein authorized is unconstitutional. Section 29 is there set forth in full and considered in its entirety, and it was held in general terms that it does no violence to the Constitution. It is not subject to any of the objections made.

3. The claim that there was a defect of parties plaintiff is not well founded. The statute expressly authorizes any holder of any street improvement bond to foreclose his lien by action in the name of the city, which is, as to the collection of the assessments, trustee for all the interested bondholders. If there are other outstanding bonds of the same class which are affected by the foreclosure, the action of a single bondholder is for the benefit of himself and others similarly situated. That such action is a class suit further appears from the requirement:

"Upon the institution of an action to collect delinquent and unpaid assessments in any paving district against property liable therefor, no other or further action shall be instituted and maintained to collect such delinquent assessments against said property for said year."

4. The contention that there is a misjoinder of causes of action cannot be sustained. Spears and Bastine, owners of lot 8, covered by the complaining bondholders' lien, in like manner as lot 1, owned by plain-

tiffs in error, are owners within the meaning of the provision requiring that "all owners or incumbrancers shall be made parties defendant in such suit." Separate assessments are made as to each parcel of land, but the lien of all the bondholders covers the whole district as a unit. Such action should proceed in rem against all those lots or parcels of land in the improvement district as to which assessments have been in default for a period of twelve months. This procedure avoids multiplicity of suits. Section 29, existing at the time of the issuance of the bonds, and under authority of which they were issued, entered into and became part of the contract. The bondholders accepted the terms of the statute. The owners and incumbrancers of the district are likewise bound by the terms of the statute. McGrath v. Oklahoma City, 156 Okla. 34, 9 P. (2d) 711. The question as to whether or not failure to join as defendants all owners and incumbrancers, as required by the statute, is cause for reversal when properly saved and presented, is not involved upon this record; hence no view is expressed upon the point.

5. A sale of property by the county treasurer for delinquent ad valorem taxes only does not affect the lien of a special paving assessment of co-equal rank. At section 23 of said chapter 173, S. L. 1923 (6240, O. S. 1931), it is provided that the two liens are co-equal. The term "co-equal" means of the same rank; that neither of the liens is inferior or superior to the other, and that they have a common standing. To hold that a sale for ad valorem taxes only extinguishes the special paving assessment lien would be to say, in effect, that the paving lien is not in a state of equality with the lien for ad valorem taxes. The authorities with respect to liens which are not co-equal because legislative authority under which they were created has provided otherwise, are not in point in the instant case. In McGrath v. Oklahoma City, supra, which involved co-equal liens, it was held: "If the sale is alone for delinquent ad valorem taxes, a lien for those taxes is discharged by the sale, and a lien for paving purposes is not affected thereby." If sale is required to satisfy the judgment, it must be "subject to existing general or ad valorem taxes and special assessments," as required by section 29.

6. The fact that delinquent assessments for street improvements made under the provisions of chapter 173, S. L. Okla. 1923 (sec. 6240, O. S. 1931), have been certified in the ordinary manner to the county treasurer by the municipal authorities, does not preclude an owner of a bond secured by the lien of such assessment from proceeding by action in the district court to foreclose such delinquent assessment lien for the benefit of himself and other bondholders similarly situated. The plaintiff bondholders elected to proceed by foreclosure, thereby adopting the additional remedy provided in the act under which the improvements were made.

The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Jos. C. Stone and W. K. Zachry in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Stone and approved by Mr. Zachry, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion, as supplemented, was adopted.

Supplemental Opinion.

OSBORN, V. C. J. We deem it advisable to supplement the views expressed in the advisory opinion relating to the application of the provision of section 57, art. 5, of the Constitution, which provides that no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length. An examination of the decisions construing such provision as applied to legislative acts discloses that the courts rarely, if ever, give to such constitutional provision a strict interpretation. In the case of In re Lee, 64 Okla. 310, 168 P. 53, it is said:

"Constitutional prohibitions of the character here involved have often been discussed by the courts, and it appears:

"That they 'have never, in construction, been given a rigid effect, but have been held applicable only to such statutes as come within their terms, when construed according to the spirit of such restriction, and in the light of the evils to be suppressed.' 36 Cyc. 1061.

"In People v. Mahaney, 13 Mich. 481, regarded as the leading case, the opinion by Judge Cooley on this point says:

" 'This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legis-

lators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent'."

In the case of City of Pond Creek v. Haskell, 21 Okla. 711, 97 P. 338, Mr. Justice Dunn prepared for the court a lengthy and learned opinion on this point in which the authorities were carefully reviewed. Therein it is said:

"An act of the Legislature, which is in form original and in itself intelligible and complete, and does not, either in its title or in its body, appear to be revisory or amendatory of any existing law, is not within the inhibition of section 57, article 5, of the Constitution, providing that 'no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but that so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length'; and this is true, even where such act seeks to effectuate the powers conferred by referring to and requiring the officers provided for thereunder to proceed in the performance of their duties in accordance with general laws previously enacted."

This rule has been consistently followed in this jurisdiction. State v. Howard, 67 Okla. 289, 171 P. 30; Town of Haskell v. Edmonds, 90 Okla. 44, 215 P. 629; M., K. & T. Ry. Co. v. Washington County, 136 Okla. 191, 276 P. 769. We quote further from the body of the opinion in the City of Pond Creek v. Haskell Case (quoting from Ex parte Pollard, 40 Ala. 98):

"In People v. Banks, 67 N. Y. 575, it is said: 'It is not necessary, in order to avoid a conflict with this article of the Constitution, to re-enact general laws whenever it is necessary to resort to them to carry into effect a special statute. Such cases are not within the letter or spirit of the Constitution, or the mischief intended to be remedied. By such a reference the general statute is not incorporated into or made a part of the special statute. The right is given, the duty declared, or burden imposed by the special statute; but the enforcement of the right or duty and the final imposition of the burden are directed to be in the form and by the procedure given by the other and general laws of the state. Reference is made to such laws, not to affect or qualify the substance of the legislation, or vary the terms of the act, but merely for the formal execution of the law. The evil in view in adopting this provision of the Constitution was the incorporating into the acts of the Legislature, by reference to other statutes, of clauses and provisions of which the legislators might be ignorant, and which affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law, which would not receive the sanction of the Legislature if fully understood.' " * * *

" 'Section 22, article 5, of the Constitution of Arkansas, which reads, 'No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, or extended or conferred shall be re-enacted and published at length,' limits legislation which grants, modifies, or destroys rights, but it has no application to legislation which affects remedies and methods of procedure alone'." St. Louis & San Francisco Railroad Company v. Southwestern Telephone & Telegraph Company, 121 Fed. 276, 58 C. C. A. 198.

Section 29, chapter 173, Session Laws 1923 (sec. 6240, O. S. 1931), does not assume to repeal other provisions of existing law or to confer or extend the provisions thereof by reference to its title only, but is an act complete in itself and by virtue of the well-established rule in this jurisdiction, that portion of section 57, art. 5, is not infringed by this act.

Then there is a second reason why said constitutional provision has no application here. That feature of the act to which objection is made provides for the sale of the real estate "in manner and form as in case of sale of real estate under execution." This provision is procedural only and in itself does not grant, modify, or destroy substantive rights.

In Casner v. Meriwether, 152 Okla. 246, 4 P. (2d) 19, an act somewhat similar was held unconstitutional. The principle reason for such holding was that the statute imposed burdens and granted rights retroactively and consequently impaired the obligation of contracts as to holders of special improvement liens. In addition thereto it was recited in the opinion that the act was also void as violative of section 57, art.

5, supra, for the reason that it extended the provisions of law for foreclosure of mortgages on real estate and sales thereunder to foreclosure of a lien of the holder of a tax sale certificate retroactively by reference to the title only. On rehearing, it was laboriously pointed out that rights and burdens were concerned and that these rights and burdens were sought to be enforced under a procedure adopted by reference to the title only. No reference was made to the authorities above mentioned, and, if said rights had been granted prospectively, instead of retrospectively, the rule announced in the last paragraph of the syllabus might have been qualified to harmonize with the rule announced herein. We adhere to the rule announced in the authorities cited in this supplemental opinion.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, CORN, and GIBSON, JJ., concur. WELCH and PHELPS, JJ., absent.