## RUNNELLS v. CITIZENS NAT. BANK of WOOSTER, OHIO, et al.

No. 20866. Opinion Filed May 3, 1932.

Leo G. Mann and Twyford & Smith, for plaintiff in error.

Abernathy & Howell, for defendants in error.

KORNEGAY, J. This was a suit to quiet title, brought by the plaintiff in error against the defendants in error in the district court of Oklahoma county. The relief asked for was to bar the defendants in error from any claim against lots 1 to 15 in block 15, Eckrote addition to Oklahoma City, and the charge was made that the claim of the defendants in error was based on holding some improvement bonds issued by Oklahoma City to cover the improvement of the lots.

The defendants filed an answer, claiming to own certain improvement bonds issued by Oklahoma City, the defendant Citizens National Bank setting up ownership in bonds Nos. 2 to 10, series 222, dated April 12, 1911, known as street improvement bonds, under ordinance No. 1465, and also bonds Nos. 6, 8, 10. 12, 18, and 20, series 19, known as street improvement bonds of Oklahoma City, issued under ordinance No. 1459, passed and approved on April 12, 1911, in both instances, it being claimed that the city was acting under an act of the Oklahoma Legislature, dated April 17, 1908.

Reply was made, which was a general denial. The defendant Flora Cochran set up a claim under bonds Nos. 14 and 16, series 219, street improvement bonds, under ordinance 1459, the ordinance being alleged to have been passed pursuant to the act of April 17, 1908. The prayer in these answers was that the plaintiff take nothing and defendants recover cost. A reply in the way of a general denial was filed. The case was tried to the court. The plaintiff in error relied upon tax sale certificates for the respective lots, made by the county treasurer to the county for the 1921 taxes, and assigned to the plaintiff. The assignments were made on the 18th of September, 1925.

A suit was brought in the district court of Oklahoma county by the plaintiff in error, relying on the certificates, to foreclose the lien for the taxes upon the respective lots, as well as several more lots embraced in various additions to Oklahoma City, and the charge was made that these liens were superior to all taxes, assessments for paving, grading, sewer, and sidewalk, and all other charges against said real estate for all years prior to 1922. There was a statement that some of the procedure with reference to some of the lots was defective. The county treasurer was made a defendant, and also the county commissioners, and the prayer was to quiet the title of the plaintiff as against all claims of all the defendants, and for an injunction against the county treasurer, forbidding him to allow any redemption through his office, and to require him to cancel all ad valorem charges and special assessments for paving, etc., if any, against the real estate described for all years prior to the years for which the certificates were issued. Neither the city of Oklahoma City nor any of the bondholders were made parties.

There were two formal journal entries made in the case, one being on the 28th of April, 1926, in which it appears that the county attorney appeared on behalf of the county commissioners, and also the county treasurer, and no other defendant appeared, and everybody was adjudged in default besides them. The court made a finding of legal notice having been given by publication for all the defendants in the petition who did not personally appear, and under subdivision 2, which embraces the lots in question, found $128.20 to be due on taxes and fees paid, interest $13.46, attorney's fees $200, and other costs $25, and adjudged them to be a lien, and condemned the property to sale, with an application of the proceeds to the payment of costs, including attorney's fees, and the payment of the judgment of plaintiff against the defendants, and that any balance be turned into court, and proceeded to cancel all liens created by law for the year 1922, and on preceding years, and the treasurer was enjoined from proceeding to collect.

The later judgment of August 26th evidently covered the interest of somebody who was in some way omitted.

At the trial there was offered the tax sale certificates, and their assignments and proof of the amount, and the decree setting aside the claims of the county treasurer and also of the county commissioners and restraining the treasurer from collecting any charges against the lots. The bonds relied upon were introduced, and photostatic copies were to be substituted for some samples of each, but the original bonds were not filed with the court, but were identified therein.

After hearing the testimony, the court pronounced the law in favor of the defendants, and rendered judgment that the plaintiff take nothing and the defendants recover costs. In due time proceedings in error were brought, and elaborate briefs have been filed, and a great many cases cited from this court and other courts that are not thoroughly in accord. We do not deem it essential to try to distinguish the cases, or to analyze all of them, in view of the way this record is presented. It is merely a suit to quiet title and to rid the plaintiff's title, whatever it may be, of the claims of the defendants under these bonds.

The bonds being improvement bonds, under the statute cited, are liens until paid or until the land is sold in satisfaction of that lien, coequal with the ad valorem tax liens. Just how much was paid on the bonds does not appear in the record. No. 2 of series No. 222, street improvement bond, calling for $128.44, on the 15th day of September, 1912, and dated the 12th of April, 1911, and drawing 6 per cent. interest from date until maturity, payable annually on the 15th of September each year, as shown by the coupons attached, is set out in the case-made, though there are no coupons attached thereto, but payments on principal appear to be indorsed thereon made as late as the 9th of May, 1928, and it appears that there was $29.34 due on this No. 2 bond at that time. No. 6 for $500, of series No. 219, is set out and the last payment indorsed thereon is made on the 29th day of February, 1928, leaving a balance, according to its statement, of $39.75, No. 14, of series No. 219, for $500 is set out, due the 15th of September, 1917, with

interest at 6 per cent. per annum. The last payment on it appearing to have been indorsed is the 12th of October, 1925, leaving a balance due of $216.68 on the principal.

Section 634, Revised Laws 1910, in existence at the time that these improvements were made and the bonds issued, provides as follows:

"Such special assessment and each installment thereof, and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed, from the date of the ordinance levying the same, co-equal with the lien of other taxes and prior and superior to all other liens against such lots or tracts and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty."

Under that statute, the payments were to be made in ten annual installments. It is claimed in the brief of plaintiff in error that the plaintiff had paid all of the ad valorem taxes due, levied and assessed for a year subsequent to the final and last installment due on the bonds and special assessment.

As this case is presented, the only question is, whether or not, by virtue of acquiring the tax lien for ad valorem taxes, followed by a decree of the court selling the land to satisfy this, and a purchase by the plaintiff in that suit, the present plaintiff in error and the plaintiff in the suit from which this proceeding in error is taken, thereby destroyed the right of the holder of the bonds. Clearly it could not be claimed that res adjudicata gave that right, for the reason that at no time was the holder of the bond or the maker of the bond, Oklahoma City, made a party to the proceeding.

Recognizing that fact, a new suit is started from which this proceeding in error is taken, but in this suit Oklahoma City is not made a party. It is claimed, however, that by enjoining the treasurer in the former suit from collecting and destroying the county commissioners' lien, or rather the county's lien, that thereby the lien for special assessments is destroyed.

Perhaps when one reads the history of these transactions, and some of the acts of the Legislature, evidently in an endeavor to clear these titles, he is convinced that if it had not been for the federal court in the case of Moore v. Otis, 275 Fed. 747, perhaps there might have been a claim successfully urged that under the provisions of

the state law the holder of an improvement bond lost all right. But under that decision and subsequent decisions of this court, we do not think that the procedure resorted to here has had that effect. Neither do we think that, had the holders of these bonds and Oklahoma City been made parties after the Moore v. Otis Case came out, which was followed by this court in Perryman v. City Home Builders, 121 Okla. 150, 248 P. 609, there would have been very much contention as to the right of the bondholder to have an equal lien and equal distribution of the proceeds, had the bondholders been represented.

The case is accordingly affirmed.

CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., and HEFNER, J., absent.